IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM DEVINE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-986 |
| ) | |
| TRANSPORT INTERNATIONAL ) | Judge McVerry |
| POOL, INC., doing business as ) | Magistrate Judge Hay |
| TRAILER FLEET SERVICES AND ) | |
| MODULAR SPACE, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

I.   RECOMMENDATION

It is respectfully recommended that the motion for summary judgment submitted on behalf of defendant (Doc. 17) be granted.

II.   REPORT

Plaintiff, William Devine ("plaintiff" or "Devine"), commenced this action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, alleging that defendant Transport International Pool, Inc., d/b/a Trailer Fleet Services and Modular Space ("defendant" or "TIP"), discriminated against him because of his age when it terminated his employment in October of 2004.

The record demonstrates that TIP is engaged in the business of selling, leasing and maintaining trailers for over-the-road trucking and storage and that plaintiff began his employment with TIP on September 7, 1971. Answer to Complaint ¶ 7; Def. Exh. A: Devine

Dep., pp. 21-22 (Doc. 18-2).[1] Plaintiff became one of two Assistant Operations Managers at TIP's Oakdale, Pennsylvania branch, in October of 1999 and, as such, was responsible for inspecting the physical condition of all parts of the trailers, including tires, brakes, interiors, roofs and floors, when the trailers were leased and again when they were returned to TIP. This required plaintiff to crawl underneath the trailers, climb into the interiors and onto the roofs using a ladder. Devine Dep., pp. 32, 35-40; Def. Exh. B: Devine Dep. Exh. 3 (Doc. 18-3); Sunil Aff. ¶ 3 (Doc. 21).

In October of 2002, plaintiff apparently suffered a stroke resulting in left-sided weakness, trembling in his left hand and slurred speech. Devine Dep., pp. 43-44. Plaintiff began a disability leave of absence on January 2, 2003, after he was admitted to the hospital, having again experienced weakness on his left side as well as shortness of breath. Devine Dep., pp. 41-45; Devine Dep. Exh. 4. Plaintiff returned to work on March 16, 2003, and on June 1, 2003, he began a second disability leave of absence after being readmitted to the hospital for a worsening

---

[1] We note here that the facts set forth herein are largely taken from defendant's Concise Statement of Material Facts ("SOF") submitted in support of its motion for summary judgment (Doc. 19), which plaintiff has admitted to, either expressly or by failing to deny them. See Plaintiff's Responsive Concise Statement ("RSOF"), generally. See also L.R. 51.1.E ("Alleged material facts set forth in the moving party's Concise Statement of Material Facts ... will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or other wise controverted by a separate concise statement of the opposing party"). Moreover, to the extent that plaintiff has denied defendant's representation of the facts, he has failed to substantiate the basis for his denials with any record references as is required under the Local Rules, and the bases for his objections nevertheless appear to be without merit. See L.R. 56.1.C.1(b); Benko v. Portage Area School District, 2006 WL 1698317 at *1 (W.D. Pa. June 19, 2006), aff'd, 2007 WL 2041977 at *1 (3d Cir. July 17, 2007); Lula v. Network Appliance, Inc., 2006 WL 1371132 at *1, *6 n.7, n.8, n.10 (W.D. Pa. May 17, 2006), aff'd, 2007 WL 2385086 (3d Cir. Aug, 21, 2007). Not only are defendant's assertions in ¶ 9 of its SOF supported by plaintiff's own representations made in support of his claim for SSDI, but affidavits, even those submitted by persons whom plaintiff has chosen not to depose, constitute evidence for purposes of summary judgment and are properly considered. See Fed. R. Civ. P. 56(b); SOF ¶ 9; RSOF ¶ 9; Def.'s Supplemental Appendix, Tabs E, F (Doc. 32).

condition of his left-sided weakness and slurred speech as well as treatment for brain lesions. Devine Dep., pp. 46-49; Devine Dep. Exhs. 5-7. Plaintiff's disability leave was certified by Aetna Life Insurance Company, TIP's disability provider, as beginning on June 1, 2003, and was subsequently extended by Aetna a total of six times. Devine Dep., pp. 42, 49-55; Devine Dep. Exhs. 6-11, 13.

On three occasions during plaintiff's second disability leave of absence, TIP provided him with a copy of its Disability Leave of Absence Policy which provides that TIP has the discretion to hire a replacement for an employee who has been out on disability for more than 26 weeks and, in a letter dated July 23, 2004, TIP expressly informed plaintiff of the possibility that he may be replaced as an Assistant Operations Manager because his disability leave of absence had, in fact, lasted more than 26 weeks. Devine Dep., pp. 53-57; Devine Dep. Exhs. 12, 14, 15, 18. Indeed, on May 14, 2004, after plaintiff had been off work for more than 49 weeks, TIP posted plaintiff's Assistant Operations Manager position, and on August 19, 2004, Daniel M. Weiland was hired to fill plaintiff's spot. Bijlani Aff. ¶¶ 6, 7 and Exhs. C-F (Doc. 21); Breaman Dep. ¶ 4 (Doc. 22).

Thereafter, on August 31, 2004, TIP received information that plaintiff was being released to return to work without restriction as of September 7, 2004. Devine Dep., pp. 49-57; Devine Dep. Exhs. 17-18; Bijlani Aff. ¶ 8 and Exh. G. Plaintiff admits that he received a Return to Work Certificate from his personal physician, D. Scott Miller, M.D., by telling Dr. Miller that he felt he could handle his "desk/computer job without too much difficulty" even though that was only half of his job duties as an Assistant Operations Manager and the other half required him to physically inspect the leased trailers. Plaintiff also admits that he told Dr. Miller he could return

to work in order to obtain the Return to Work Certificate, but that he had not fully recovered from his disability.  Devine Dep., pp. 58-59; Devine Dep. Exh. 19.  See SOF ¶¶ 22, 23; RSOF ¶¶ 22, 23.  In a letter dated September 2, 2004, TIP informed plaintiff that a replacement had been hired to fill his position as Assistant Operations Manager and that, in accordance with TIP's Disability Leave of Absence Policy, he would be placed on a 30-day unpaid Personal Leave of Absence effective September 7, 2004.  Devine Dep., pp. 57, 65-66; Devine Dep. Exh. 18.

On September 22, 2004, Mr. Weiland unexpectedly resigned having accepted a position with a different employer.  Bijlani Aff. ¶ 9 and Exh. H; Breaman Aff. ¶ 5.  At the time, it appears that as part of TIP's business plan for the fourth quarter of 2004 and for 2005, its Region Operations Managers were directed to reduce the number of salaried operational personnel at its branches and, as a result, Michael A. Breaman, TIP's Operations Manager for the North Central Region who was responsible for, amongst others, TIP's Oakdale, Pennsylvania branch, decided to eliminate the Assistant Operations Manager position that Weiland had held.  Breaman Aff. ¶¶ 2, 6-8 and Exhs. A-C.  As such, in a letter dated October 1, 2004, Mr. Bijlani informed plaintiff that his last official day of employment would be October 6, 2004, as stated in the September 2, 2004 letter,  and advising him that there were other Assistant Operations Managers positions open at other TIP branches throughout the country which plaintiff could access and apply for over the internet.  Plaintiff was also advised that if he was interested in applying for one of those positions to inform Bijlani so that he could ensure that plaintiff's application would be reviewed.  Devine Dep., pp. 66-67; Devine Dep. Exh. 20; Bijlani Aff. ¶ 10 and Exh. I.  Plaintiff, however, did not apply for any of the Assistant Operations Manager positions referred to in Mr. Bijlani's letter or otherwise respond to Mr. Bijlani's letter and, on October 6, 2004, plaintiff's employment

4

was effectively terminated in accordance with TIP's Disability Leave of Absence Policy.  Devine Dep., p. 67-68; Bijlani Aff. ¶¶ 11, 12.

On April 5, 2005, plaintiff submitted an application for Social Security Disability Insurance benefits ("SSDI benefits") under the Social Security Act, in which he represented that he became disabled to work on June 1, 2003; that he was still disabled; that he would notify the Social Security Administration if his medical condition improved so that he would be able to return to work; and that he would also notify the Social Security Administration if he, in fact, did return to work.  Devine Dep. pp. 68-74; Devine Exh. 21.  Plaintiff provided additional information to the Social Security Administration which is reflected in a Disability Report - Field Office (Form SSA-3367) and a Disability Report - Adult (Form SSA-3368), both of which are dated May 11, 2005, and reiterate plaintiff's statement that he became unable to work on June 1, 2003, and has not worked since.  Taft Aff. ¶¶ 2-3 and Exhs. B, C.  The Disability Report - Adult (Form SSA-3368) also indicates that plaintiff's illnesses, injuries or conditions that limit his ability to work include stroke and left side weakness; that he had "a hard time getting around with [his] left leg;" that going up and down stairs was difficult; that he walks with a limp; that he recently had some problems with his left shoulder; and that he was not participating in any vocational rehabilitation services, employment services or other support services to help him get back to work.  Taft Aff. ¶¶ 2-3 and Exh. C.  In addition, in a Daily Activities Questionnaire that plaintiff submitted to the Social Security Administration dated May 14, 2005, he indicated that he "can't use a step stool or ladder due to balance problems;" that he can do only one load of laundry at a time; that he does only a "limited amount of walking do [sic] to my left leg problem;" that he cannot change and make a bed without resting; that he must stop and rest while

5

walking or climbing steps "due to my left leg and balance problems;" and that he wears a leg brace to keep his left leg from dragging.  Taft Aff. ¶¶ 2, 3 and Ex. D.

Based on plaintiff's application, the Social Security Administration issued a Notice of Award on June 6, 2005, finding that plaintiff became "disabled" within the meaning of the Social Security Act on June 1, 2003.  Devine Dep., pp. 75-76; Devine Dep. Exh. 22.  Moreover, it is undisputed that plaintiff has continued to receive SSDI benefits since the Notice of Award was issued.  Devine Dep., pp. 76-77; Devine Dep. Exh. 23.  It is further undisputed that plaintiff has not applied for any employment since he began his second disability leave of absence from TIP on June 1, 2003, or otherwise held a job of any nature since his employment was terminated in October of 2004.  Devine Dep., p. 78.

Plaintiff filed the instant complaint on July 25, 2006, bringing a single claim for age discrimination under the ADEA.  In addition to punitive damages, attorney's fees, costs and expenses, the only monetary damages plaintiff seeks is severance pay, asserting that he is entitled to the same severance package as other TIP employees whose jobs were eliminated during the "mass layoffs" that occurred around the time that plaintiff was terminated.  Devine Dep., pp. 79-82; Def. Exh. C: Pl.'s Amended Initial Disclosure ¶ 3 (Doc. 18-4); Def. Exh. D: Pl.s Answer to Defendant's First Set of Interrogatories, No. 24 (Doc. 18-5).

Defendant has now filed a motion for summary judgment arguing that plaintiff is barred from bringing a claim under the ADEA under the doctrine of judicial estoppel and that plaintiff is otherwise unable to demonstrate a *prima facie* case of discrimination or that TIP's legitimate, non-discriminatory reasons for terminating plaintiff's employment are merely pretext for discrimination.

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ. P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial* ... or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Thus, it must be determined "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52.

Defendant first argues that plaintiff should be judicially estopped from proceeding on his claim under the ADEA since his representation to the Social Security Administration in April of 2005 that he has been disabled since June 1, 2003, is patently inconsistent with an essential element of plaintiff's *prima facie* case under the ADEA, i.e., that he was qualified to

hold his position at the time of his termination in October of 2004, and that he has failed to offer a satisfactory explanation for the discrepancy.  We agree.

In order to establish a *prima facie* case under the ADEA, plaintiff must demonstrate that 1) he was a member of the protected age class; 2) that he was qualified to hold the position; 3) that he suffered an adverse employment decision; and 4) that he was replaced by a significantly younger individual.  Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 330 (3d Cir. 1995).  "To be 'qualified' a plaintiff must have been 'performing his job at a level that met his employer's legitimate expectations' at the time of his discharge."  Detz v. Greiner Industries, Inc., 346 F.3d 109, 119 (3d Cir. 2003) ('Detz"), quoting Eible v. Houston, 1998 WL 303692 at *5 n.4 (E.D. Pa. April 21, 1998).  Thus, in order to succeed on his ADEA claim, plaintiff must prove that he was able to perform his job as an Assistant Operations Manager on October 6, 2004.

Plaintiff, however, indicated in his application for SSDI benefits that he became disabled on June 1, 2003, and that he was still disabled as of that date, which was April 5, 2005.  To be found disabled under the Social Security Act, the claimant must not only be unable to perform his "past relevant work," but he must be incapable of performing any other job that exists in significant numbers in the national economy.  Detz, 346 F.3d at 119.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(e)-(f). 404.1560(b)-(c).  It therefore appears that plaintiff's representation to the Social Security Administration that he was unable to perform his past relevant work or any other job between June 1, 2003 and April 5, 2005, is "patently inconsistent" with his assertion here that he was able to perform his job as an Assistant Operations Manager

when he was terminated on October 4, 2004.  See Detz, 346 F.3d at 119-120.[2]

> Under these circumstances, the United States Supreme Court has held that, while
>
> pursuit, and receipt, of SSDI benefits does not automatically estop
> the recipient from pursuing an ADA claim ... an ADA plaintiff
> cannot simply ignore her SSDI contention that she was too
> disabled to work.  To survive a defendant's motion for summary
> judgment, she must explain why that contention is consistent with
> he ADA claim that she could "perform the essential functions" of
> her previous job ....

Cleveland v. Public Managment Systems Corp., 526 U.S. 795, 797-98 (1999).  The Court further found that "[t]o defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job ...." Id. at 807.  See Krensavage v. Bayer Corp., 2006 WL 2794562 at *10 (W.D. Pa. September 27, 2006) (McVerry, J.) (Finding that a plaintiff who has brought a claim under the ADA "is judicially estopped from establishing the prima facie element of qualification, unless a clear factual showing is made to explain the inconsistency between the positions taken in the different fora").

In Detz, 346 F.3d at 117, 120, the Court of Appeals for the Third Circuit found that the analysis set forth in Cleveland, is equally applicable to claims brought under the ADEA, and concluded that the plaintiff's sworn statement made to the Social Security Administration

---

[2] Moreover, as argued by defendant, plaintiff not only made the representation that he was disabled in his initial SSDI benefits application under penalty of perjury but he subsequently provided additional information to the Social Security Administration which was recorded in the two disability reports dated May 11, 2005, suggesting that he was unable to work.  As well, based on plaintiff's representations, the Social Security Administration found that plaintiff was, in fact, disabled and awarded SSDI benefits on June 6, 2005, which plaintiff has been receiving ever since.

that he was physically incapable of performing his job "crashes face first" against his assertion that he was wrongfully discharged from a job that he was qualified for and, thus, capable of performing.  Id.  The Court went on to find that the plaintiff had not adequately reconciled his two positions opining that, "his explanation would not allow a reasonable juror to find in the first instance that Detz had a good faith belief in his entitlement to SSDI benefits, and then still conclude that he was qualified for his position at Greiner, as Cleveland requires."  Id. at 120.

Here, plaintiff does not discuss either Cleveland or Detz, or even attempt to reconcile the inconsistent positions he has taken but, rather, merely reiterates his present position that at the time his ADEA claim arose, i.e., when he was terminated in October of 2004, he was capable of returning to his former position.  Pl.'s Brief, p. 2 (Doc. 28).  Indeed, plaintiff appears to be under the misapprehension that his sworn representations made to support his claim for SSDI benefits are completely irrelevant to his present ADEA claim, having argued in his RSOF that his application for SSDI benefits should not be considered at all since he did not file the application until after he was terminated from his position and, thus, TIP could not have relied on any fact represented in his SSDI application when it made the decision to terminate him.  The issue, however, is not what TIP knew about plaintiff's claim for disability benefits when it terminated his employment but, rather, the issue is whether plaintiff can now be heard to claim he was able to perform his job as an Assistant Operations Manager at the time TIP terminated his employment on October 6, 2004, when plaintiff has also sworn to the fact that he was incapable of performing his job as an Assistant Operations Manager at any time between June 1, 2003, and April 5, 2005, which necessarily includes October 6, 2004.  Under Cleveland and Detz, absent an explanation which would reconcile those two positions, plaintiff is judicially estopped from

asserting that he was qualified for his position when he was terminated. Because plaintiff has failed to provide such an explanation, no reasonable juror could find that plaintiff had a good faith belief that he was entitled to SSDI benefits and still conclude that he was qualified for his position at TIP.³ As such, plaintiff is unable to prove his *prima facie* case of discrimination under the ADEA, and defendant is entitled to summary judgment.

For these reasons, it is recommended that the motion for summary judgment submitted on behalf of defendant (Doc. 17) be granted.

Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objection shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/ *Amy Reynolds Hay*
United States Magistrate Judge

Dated: 21 September, 2007

cc:   Hon. Terrence F. McVerry
      United States District Judge

      All counsel of record by Notice of Electronic Filing

---

³Indeed, it is not at all clear that plaintiff is even entitled to the initial assumption articulated in Cleveland and Detz, that he had a good faith belief in his statements to the Social Security Administration having made the bold statement in furtherance of his argument that his social security claim is irrelevant to the instant litigation, that, "[a]fter his illegal termination from TIP, [he] was forced to find a source of income." RSOF ¶ 45. The implication, of course, is that plaintiff was justified in applying for SSDI benefits, not because he was disabled, but simply because he needed income. See Cleveland, 526 U.S. at 807; Detz, 346 F.3d at 120. See also Motley v. New Jersey State Police, 196 F.3d 160, 166 (3d Cir. 1999), cert. denied, 529 U.S. 1087 (2000) ("It is difficult to get around the conclusion that, in at least one fora, Motley was not completely honest").